State of Rhode Island *v.* Pawtuxet Turnpike Company

with the law relative to rendering accounts when cited. This instruction was refused.

The issue to be tried was, simply, whether the defendant accounted on the 11th day of October, 1862, which the plaintiff alleges he neglected to do, and assigns this neglect as a breach of the bond. This allegation is traversed by denying that he did neglect thus to account. Upon the trial of this issue, we cannot hold that the subsequent proceedings as above set forth are in law conclusive, even if admissible, as evidence of compliance. We cannot therefore sustain this exception. The motion for new trial is therefore overruled.

STATE OF RHODE ISLAND *v.* PAWTUXET TURNPIKE COMPANY

The doctrine reaffirmed, that, in the absence of a statutory provision, lapse of time is no bar to an information in the nature of a *quo warranto*, when filed by the Attorney General.

The forfeiture decreed in this case upheld on the ground of a sale of its turnpike road by the defendant corporation, notwithstanding the power to sell land and other property granted by its charter.

THIS was an application by the defendants for a rehearing upon an information in the nature of a *quo warranto*, and to set aside the judgment of forfeiture rendered at the former hearing.

The case was argued by *Edwin Metcalf* for the petitioners upon the following brief :—

I. The proceeding was not instituted in behalf of the State until after a lapse of over six years, and this is held by the English Courts to be a good bar to a prosecution for a forfeiture. Angell and Ames on Corporations, Sec. 743, p. 718–19. (7th Edit.) and cases there cited. It would seem that under our statutes of limitations, the right or power to interfere with corporate franchises, as claimed in this case, can hardly be an unlimited one, and if there be any limitation, that of six years would be natural and obvious.

II. The Court in its opinion omits any reference to the first section of the charter of 1825. The conveyance held to be a cause of forfeiture is claimed to have been made in good faith, under express powers granted by this section. Applying the very language of the opinion vindicating the neglect to make annual election, of corporate officers, the act condemned by the Court would seem to be equally justifiable under the charter. And if the charter does not confer power to make such a grant, or conveyance, would not the proper remedy be to avoid the conveyance, and leave the corporation still bound to maintain that portion of its road which it had attempted to convey?

III. But this conveyance, if binding on the corporation, is not necessarily a cause of forfeiture. The cases cited by the Court go to show that there must be either a wilful abuse of corporate powers, a gross neglect of duties, or an irremediable injury to the public, to warrant so extreme a measure as the forfeiture of corporate franchises. See the general doctrine stated and illustrated in Angell and Ames on Corporations, Sec. 776, p. 760 to 762. In the language of chief justice Nelson in a case cited by the Court, (23 Wendell, 211.) "A substantial compliance, according to the terms of the charter, is all that is required."

IV. The defendants know of no case in point, but think it may be safely asserted that the power to declare a charter forfeited has never been exercised under similar circumstances. The facts submitted to the jury, their verdict, and the opinion of the court, taken together show, 1. That the conveyance in question was made in the exercise of a power granted by charter. 2. That no neglect of duty by the corporation is charged or implied. 3. That instead of working an injury to the public or to individuals, the conveyance in question was made for the manifest convenience and benefit of the public and of individuals, and at the urgent solicitation of the Town of Cranston, which accepted the conveyance, and which in this matter is the sole representative of the public convenience and interests.

*Charles H. Parkhurst*, for the Attorney General, in behalf of the State, argued against the petition upon the following brief:—

The ground upon which the charter was declared forfeited

was that the defendant corporation did, in the year 1855, sell to the town of Cranston a portion of their road, and that since that time it had ceased to keep that portion of said road in repair.

I. This is clearly an act which said corporation could not rightfully do under its charter. It is of itself a deliberate act of wilful misfeaseance, which is a sufficient cause for the forfeiture of its charter. Prior to this sale, whenever the corporation wished to convey a portion of their road, they asked authority from the State, which had a reversionary interest in the road under the charter. This assent was granted upon such restrictions as were necessary to protect the interests of those living adjoining the part conveyed, and the public interests also. See Schedules, January Session, 1847, p. 45.

II. By the terms of the charter providing for the vesting of the road in a certain contingency in the State, said road became, of necessity, inalienable estate, in whole, or in part, without the express assent of the Legislature. See Schedules, January Session, 1825, p. 27.

III. There has been no waiver of its reversion by the State. The Statute of Limitations does not run against the State so as to bar it from asserting its claims to the property forfeited by misuser or misfeasance, where the property belongs to the State by virtue of its sovereignty.

The opinion of the court was read by DURFEE, J. The leading ground assigned for this application is, that the prosecution was not instituted in behalf of the State until after a lapse of over six years from the happening of the cause of forfeiture; and we are referred to Angell and Ames on Corporations, (7th Ed.) § 743, and the cases there cited, as showing that after the lapse of so long a time, we ought not to entertain the proceeding. The cases cited in Angell and Ames show that the English rule is, not to allow an information in the nature of a *quo warranto* to be filed, *at the instance of a private individual*, for the purpose of impeaching the title to a corporate office or purchase, where the same has been held or exercised without complaint for more than six years from the time of the alleged usurpation, An information in the nature of a *quo warranto* cannot be filed

by a private individual without leave, which the court may, at its discretion, either grant or refuse. To regulate their discretion, as affected by the lapse of time, the English courts adopted the rule which we have stated. But the Attorney General, representing the Crown in England and the State in this country, may file an information in the nature of a *quo warranto*, without leave, according to his own discretion; and we find no English law which holds that an information, so filed, can be barred by the lapse of six years independently of any statute to that effect. On the contrary, in the leading case of *Rex* v. *Wardroper*, 4 Burr. 1963, where, after a lapse of nineteen years, the court refused leave to file an information, the judges were careful to express a reservation in favor of the Crown, and said: "Indeed, no length of usurpation shall affect the Crown, *nullum tempus occurrit regi.*" The only case which we find that claims a discretion for the court, in this regard, over an information filed by the Attorney General, is the *People* v. *Oakland County Bank*, 1 Douglas (Mich.) R. 285. The court in that case do not profess to follow any precedent, but stand on their own opinion of what is salutary and reasonable. We think the case of *Rex* v. *Wardroper* declares the sounder doctrine. The Attorney General being a *public* officer, may be presumed to be capable of a salutary and reasonable discretion, as well as the court, and when, acting in behalf of the State, he deems it his duty to prosecute for a forfeiture, it is not for the court, in the absence of any statutory limitation, to say he is too late. Indeed this court has itself decided that, after the information has once been filed, its discretion ceases, and it has then nothing to do but administer the law the same as in any other case. *State* v. *Brown*, 5 R. I. 1.

In this case, moreover, the Attorney General is acting not only on his own discretion, but also under a resolution of the General Assembly authorizing the proceeding, which gives additional strength to the reason why the court should allow the prosecution to go on, notwithstanding the lapse of time.

The ground upon which the court have decreed a forfeiture in this case is, that the defendant corporation did, in the year

1855, sell and convey to the town of Cranston a portion of their road, and that since then they have ceased to keep that portion of the road in repair. The counsel for the corporation claims, as another reason for a rehearing, that under the first section of their charter, the corporation had a right to make such sale and conveyance, and that the attention of the court was not directed to this provision at the former hearing. The first section of the charter gives a name to the corporation, and provides that by that name they " shall be and hereby are made able and capable in law, as a body corporate, to purchase, possess, have and enjoy to themselves, their successors and assigns, lands not exceeding fifty acres, tenements, rents, tolls and effects of what kind or nature soever, and the same to grant, sell or dispose of by deed or deeds at their own will and pleasure." This section confers the right which is claimed for the corporation, if the road itself was intended to be included in the fifty acres there mentioned. Subsequent provisions of the charter show that this could not have been the intention. The second section prescribes that the road, to be made and maintained by the corporation, shall be three rods wide, and shall commence and terminate at certain points, pursuing a certain direction. The eleventh section provides that when the earnings of the road shall amount to enough to pay what the road cost, together with the expense of maintaining and keeping it in repair, and twelve per cent. per annum in interest thereon, the corporation shall be dissolved, and the road aforesaid vest in the State. These two sections are inconsistent with a right to sell and convey the road; for after a sale and conveyance legally made, the road could no longer be maintained by the corporation nor vest in the State. The fifty acres mentioned in the first section must therefore be construed to mean fifty acres in addition to the land on which the road is made—a construction which the more readily suggests itself from the fact, that a special mode is provided for the acquisition of the land to be used for the road.

We have also been referred to a statute, passed in 1864, authorizing turnpike corporations to transfer their roads to the towns where they are located, for public highways, and have

been asked to infer from thence that the transfer by this corporation of a portion of its road for such a purpose is no ground of forfeiture. The statute is not retrospective in its terms, and it does not purport to be merely declaratory of existing laws. It initiates a new policy; but, while it may afford reason, appealing to the Attorney General or the Legislature, for not prosecuting this corporation for having done what this and every other turnpike corporation in the State are now permitted to do, we do not see how it gives us any right to declare the law, as applicable to an act done in 1855, to be any otherwise than it was before the enactment of the statute.

The counsel for the corporation also presses upon the court, again, the arguments which were urged at a former hearing. We, however, see no sufficient reason for changing the opinion then expressed, and must, therefore, dismiss the application.